IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

HEATHER S.[1]

        Plaintiff,

v.

COMMISSIONER OF SOCIAL SECURITY
ADMINISTRATION,

        Defendant.

Civ. No. 1:22-cv-01129-CL

**OPINION AND ORDER**

MARK D. CLARKE, Magistrate Judge.

Plaintiff Heather S. ("Plaintiff") seeks judicial review of the final decision of the Commissioner of the Social Security Administration denying her claim for supplemental security income benefits. Full consent to magistrate jurisdiction was entered on September 2, 2022 (Dkt. #7). For the reasons provided below, the Commissioner's decision is AFFRIMED.

## BACKGROUND

Plaintiff is a 36-year-old woman who alleges she is unable to work due to the effects of nerve and tendon damage in her arms and hands, an unhealed broken arm, Hashimoto's disease, chronic depression, chronic fatigue syndrome, chronic pain, Triangular Fibrocartilage Complex (TFCC) tear to the right hand, hiatal hernia, hypertension, kidney stones, post knee surgery right, and broken tibia unhealed. Tr. 283. On September 30, 2019, Plaintiff protectively filed an application for supplemental security income alleging disability beginning September 1, 2018,

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party or parties in this case.

1 - Opinion and Order

Tr. 223-29, 230-37. The claim was initially denied on April 15, 2020, and upon reconsideration on November 3, 2020. Tr. 152-54. Plaintiff requested a hearing before an ALJ on November 12, 2020. Tr. 155-56. Plaintiff appeared in person and testified at a hearing held on July 15, 2021. Tr. 41-69. ALJ Katherine Weatherly found Plaintiff not disabled on September 24, 2021. Tr. 14-32. The Appeals Council denied review on June 6, 2022, making the ALJ's decision the final agency decision. Tr. 1-6. Plaintiff now requests that the United States District Court review ALJ Weatherly's decision and alleges harmful legal error. Pl.'s Br. ECF # 14 at 1-15.

## DISABILITY ANALYSIS

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r. Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The five-step sequential process asks the following series of questions:

1. Is the claimant performing "substantial gainful activity"? 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). This activity is work involving significant mental or physical duties done or intended to be done for pay or profit. 20 C.F.R. §§ 404.1510; 416.910. If the claimant is performing such work, she is not disabled within the meaning of the Act. 20 C.F.R. §§ 404.1520(a)(4)(i); 416.920(a)(4)(i). If the claimant is not performing substantial gainful activity, the analysis proceeds to step two.

2. Is the claimant's impairment "severe" under the Commissioner's regulations? 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). Unless expected to result in death, an impairment is "severe" if it significantly limits the claimant's physical or mental ability to do basic work activities. 20 C.F.R. §§ 404.1521(a); 416.921(a). This impairment must have lasted or

2 - Opinion and Order

must be expected to last for a continuous period of at least 12 months. 20 C.F.R. §§ 404.1509; 416.909. If the claimant does not have a severe impairment, the analysis ends. 20 C.F.R. §§ 404.1520(a)(4)(ii); 416.920(a)(4)(ii). If the claimant has a severe impairment, the analysis proceeds to step three.

3. Does the claimant's severe impairment "meet or equal" one or more of the impairments listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, then the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(iii); 416.920(a)(4)(iii). If the impairment does not meet or equal one or more of the listed impairments, the analysis proceeds to the "residual functional capacity" ("RFC") assessment.

   a. The ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's RFC. This is an assessment of work-related activities that the claimant may still perform on a regular and continuing basis, despite any limitations imposed by his or her impairments. 20 C.F.R. §§ 404.1520(e); 404.1545(b)-(c); 416.920(e); 416.945(b)-(c). After the ALJ determines the claimant's RFC, the analysis proceeds to step four.

4. Can the claimant perform his or her "past relevant work" with this RFC assessment? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(iv); 416.920(a)(4)(iv). If the claimant cannot perform his or her past relevant work, the analysis proceeds to step five.

5. Considering the claimant's RFC and age, education, and work experience, is the claimant able to make an adjustment to other work that exists in significant numbers in the national economy? If so, then the claimant is not disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v); 404.1560(c); 416.960(c). If the claimant cannot perform such work, he or she is disabled.

*See also Bustamante v. Massanari*, 262 F.3d 949, 954-55 (9th Cir. 2001).

The claimant bears the burden of proof at steps one through four. *Id.* at 954. The Commissioner bears the burden of proof at step five. *Id.* at 953-54. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett v. Apfel*, 180 F.3d 1094, 1100 (9th Cir.

3 - Opinion and Order

1999) (internal citations omitted); *see also* 20 C.F.R. §§ 404.1566; 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v); 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Bustamante*, 262 F.3d at 954-55; *Tackett*, 180 F.3d at 1099.

## THE ALJ'S FINDINGS

Applying the above analysis, the ALJ made the following findings:

1. Plaintiff has not engaged in substantial gainful activity since September 1, 2018, the alleged onset date. Tr. 16.

2. Plaintiff has the following severe impairments: bilateral carpel tunnel syndrome, status-post left cubital tunnel release surgery; right knee status-post meniscectomy; status-post left humerus fracture; status-post left shoulder arthroscopic debridement and chronic pain and fatigue syndrome. Tr. 17.

3. Plaintiff does not have an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1. Tr. 22.

4. Plaintiff has the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) and 416.967(b). This individual would be limited to no more than frequent climbing of ramps and stairs; no climbing of ladders, ropes or scaffolds; no kneeling; occasional crouching and no crawling. This individual would be limited to frequent handling and fingering with both hands. Tr. 23.

5. The Plaintiff is capable of performing past relevant work as a General Clerk and Cashier II. This work does not require the performance of work-related activities precluded by the claimant's residual functional capacity. Tr. 31.

6. Plaintiff has not been under a disability, as defined in the Social Security Act from September 1, 2018 through the date of this decision. Tr. 32.

## STANDARD OF REVIEW

The reviewing court must affirm the Commissioner's decision if it is based on the proper legal standards and the legal findings are supported by substantial evidence in the record. 42 U.S.C. § 405(g); *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "'Substantial evidence' means 'more than a mere scintilla but less than a preponderance,' or more clearly stated, 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Bray v. Comm'r Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)). In reviewing the Commissioner's alleged errors, this Court must weigh "both the evidence that supports and detracts from the [Commissioner's] conclusions." *Martinez v. Heckler*, 807 F.2d 771, 772 (9th Cir. 1986). Variable interpretations of the evidence are insignificant if the Commissioner's interpretation is rational. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005).

If the decision of the Appeals Council is the final decision of the Commissioner, this Court must review the decision of the Appeals Council to determine whether that decision is supported by substantial evidence. *Howard v. Heckler*, 782 F.2d 1484 (9th Cir. 1986). Where the evidence before the ALJ or Appeals Council is subject to more than one rational interpretation, the Commissioner's conclusion must be upheld. *Batson*, 359 F.3d at 1198 (citing *Andrews*, 53 F.3d at 1041). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006) (quoting *Hammock*, 879 F.2d at 501). Additionally, a reviewing court "cannot affirm the [Commissioner's] decision on a ground that the [Administration] did not invoke in making its decision." *Stout v. Comm'r Soc. Sec. Admin.*, 454

F.3d 1050, 1054 (9th Cir. 2006) (citations omitted). Finally, a court may not reverse the Commissioner's decision on account of an error that is harmless. *Id.* at 1055-56. "[T]he burden of showing that an error is harmful normally falls upon the party attacking the agency's determination." *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

Even where findings are supported by substantial evidence, "the decision should be set aside if the proper legal standards were not applied in weighing the evidence and making the decision." *Flake v. Gardner*, 399 F.2d 532, 540 (9th Cir. 1968). Under sentence four of 42 U.S.C. § 405(g), the reviewing court has the power to enter, upon the pleadings and transcript record, a judgment affirming, modifying, or reversing the decision of the Commissioner, with or without remanding the case for a rehearing.

## DISCUSSION

Plaintiff presents the following issues for review:

1. Whether the ALJ properly considered Plaintiff's subjective symptom testimony surrounding her Chronic Fatigue Syndrome (CFS); and
2. Whether the ALJ properly considered the medical opinions of Leonard Wilk, MD, under SSR 14-1p.

For the following reasons, the Court finds that the ALJ properly considered Plaintiff's subjective symptom testimony and the medical opinion of Dr. Wilk. The decision of the Commissioner is AFFIRMED.

### I. The ALJ did not err in evaluating Plaintiff's subjective symptom testimony regarding her Chronic Fatigue Syndrome (CFS).

Plaintiff contends the ALJ erred in discounting her subjective statements about her limitations due to CFS and failed to follow SSR 14-1p[2]. Pl.'s Br. ECF # 14 at 9-11.

---

[2] The Commissioner issues Social Security Rulings to clarify the Act's implementing regulations and the agency's policies. SSRs are binding on all components of the SSA. 20 C.F.R. § 402.35(b)(1). SSRs do not have the force of law. However, because they represent the Commissioner's interpretation of the agency's regulations, we give them some deference. *Bunnell v. Sullivan*, 947 F.2d 341, 346 n.3 (9th Cir. 1991) (en banc). *See also Ukolov v. Barnhart*,

SSR 14-1p is consistent with 20 C.F.R. § 404.1529 and 416.929, which direct how an ALJ must evaluate a Plaintiff's subjective symptom testimony about their impairments. SSR 14-1p states:

> A. *First step of the symptom-evaluation process.* There must be medical signs and findings that show the person has an MDI(s) which we could reasonably expect to produce the fatigue or other symptoms alleged. If we find that a person has an MDI that we could reasonably expect to produce the alleged symptoms, the first step of our two-step process for evaluating symptoms is satisfied.
>
> B. *Second step of the symptom-evaluation process.* After finding that the MDI could reasonably be expected to produce the alleged symptoms, we evaluate the intensity and persistence of the person's symptoms and determine the extent to which they limit the person's capacity for work. If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, we consider all of the evidence in the case record, including the person's daily activities; medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms. We will make a finding about the credibility of the person's statements regarding the effects of his or her symptoms on functioning. When we need additional information to assess the credibility of the individual's statements about symptoms and their effects, we will make every reasonable effort to obtain available information that could shed light on the credibility of the person's statements.

*Social Security Ruling 14-1p* (FR Vol. 79, No. 64, effective April 3, 2014). Clear and convincing reasons for rejecting a claimant's testimony "include conflicting medical evidence, effective medical treatment, medical noncompliance, inconsistencies in the claimant's testimony or between her testimony and her conduct, daily activities inconsistent with the alleged symptoms, and testimony from physicians and third parties about the nature, severity and effect of the symptoms" about which the claimant complains. *Bowers v. Astrue*, No. 11-cv-583-SI, 2012 WL 2401642, at *9 (D. Or. June 25, 2012) (citing *Tommasetti*, 533 F.3d at 1040); *Ghanim v. Colvin*, 763 F.3d 1154, 1163 (9th Cir. 2013). In some circumstances, an ALJ may reject subjective

---

420 F.3d 1002, 1006 n.2 (9th Cir. 2005); *Holohan v. Massanari*, 246 F.3d 1195, 1202 n.1 (9th Cir. 2001). We will not defer to SSRs if they are inconsistent with the statute or regulations. *Id.*

7 - Opinion and Order

complaints where the claimant's "statements at her hearing do not comport with objective medical evidence in her medical record." *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1227 (9th Cir. 2009). However, a lack of objective evidence may not be the sole basis for rejecting a claimant's subjective complaints. *See Rollins v. Massanari*, 261 F.3d 853, 856 (9th Cir. 2001).

At Plaintiff's July 2021 hearing, Plaintiff testified that, due to her CFS, sometimes she "can get up in the morning ... I just feel extremely tired all the time where it just, I feel like I need to lay back down. It just takes me out." Tr. 55. Plaintiff also testified she needs to lay down 2-3 times per day to relieve her symptoms, but that it does not relieve her symptoms all together. Tr. 59-60. At the first step, the ALJ determined that Plaintiff's CFS is a medically determinable impairment that could reasonably be expected to produce her symptoms. At the second step, however, the ALJ found that her statements concerning the intensity, persistence and limiting effects of such symptoms are not entirely consistent with the medical evidence and other evidence in the record. Tr. 24. After consideration of the entire record, the Court finds that the ALJ provided substantial evidence in her two-step evaluation of Plaintiff's subjective symptom testimony regarding her CFS.

First, the ALJ determined that Plaintiff's symptoms are inconsistent with the medical evidence of record. Tr. 24. The ALJ acknowledged and cited to evidence in the record supporting Plaintiff's subjective pain and fatigue, including her lab results and her diagnoses of CFS. *See* Tr. 28; Tr. 283, 294-301, 546, 554, 574, 891, 932, 1368. However, the ALJ found "the longitudinal evidence of record does not support [Plaintiff]'s allegations concerning the intensity, persistence and limiting effects of her symptoms." *Id.* In particular, the record reflects that Plaintiff's CFS is not related to hormone imbalance, but more so due to her chronic pain. Tr. 75,

8 - Opinion and Order

876 ("Clmt's chronic fatigue is likely d/t chronic pain, not her thyroid"; "We discussed the fact that her chronic low energy levels are likely due to poor sleep due to her chronic pain issues and unlikely to be due to a thyroid condition as her last TSH was normal"). This is relevant because, as the ALJ notes, Plaintiff's chronic pain has been stable and well-controlled under her prescribed medications. Tr. 28; *See* Tr. 544, 554, 556-7, 639, 852, 863, 866, 932, 991. The record also shows several instances where providers have noted, "Negative for fever and malaise/fatigue" after conducting an objective "review of systems." Tr. 634, 661, 1777, 1810, 2530. The ALJ thus provided at least one clear and convincing reason to reject Plaintiff's subjective symptom testimony by showing inconsistencies in the record with her claims of debilitating fatigue.

Second, the ALJ found Plaintiff's subjective complaints to be at odds with her activities of daily living. Discussion of activities of daily living may support the decision to give less weight to symptom testimony in two ways: it may illustrate a contradiction with previous testimony or it may show that activities "meet the threshold for transferable work skills[.]" *Orn v. Astrue*, 495 F.3d 625, 639 (9th Cir. 2007); *Molina v. Astrue*, 674 F.3d 1104, 1112-13 (9th Cir. 2012) (Activities of daily living may be used to discredit a claimant where they either "are transferable to a work setting" or "contradict claims of a totally debilitating impairment").

Here, the ALJ provided clear and convincing evidence to conclude that Plaintiff's activities of daily living conflicted with her testimony and conflict claims of a totally debilitating impairment. The ALJ stated that "the [Plaintiff] has described daily activities, which are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations . . . despite debilitation, records show that the [Plaintiff] takes care of her two young children. She is able to drive a car, shop in stores and spend time with her horses. The [Plaintiff]

9 - Opinion and Order

testified that she has three horses that live on a ranch and she does some things when she feels okay." Tr. 29. The record does reflect that Plaintiff participates in these activities. Tr. 64, 296, 325, 346, 348, 50, 575, 680. On October 2, 2018, after the alleged onset date, Plaintiff sustained a right wrist fracture after her hand collided with her horse's head after being near her horses. Tr. 680, 1184, 2168. After cleaning an irrigation ditch in 2020, Plaintiff sustained an injury to her left wrist showing that she was physically capable of strenuous work at that time. Tr. 1478. Ultimately the ALJ found that "the objective medical evidence of record demonstrates that the claimant's impairments are neither as debilitating nor disabling as alleged and that she has received conservative treatment for her impairments." Tr. 28. Accordingly, the Court finds that the ALJ reasonably evaluated Plaintiff's fatigue in light of her activities of daily living and provided substantial evidence in doing so.

## II.     The ALJ did not err in evaluating the medical opinion of Leonard Wilk, MD.

Plaintiff argues the ALJ erred in rejecting the medical opinion of Leonard Wilk, MD. Specifically, Plaintiff argues that the ALJ should have given Dr. Wilk's opinion more weight because he was her primary care provider, and she asserts that the ALJ erred in using treatment notes to discount Dr. Wilk's opinion because the notes are not findings related to the symptoms of CFS. Pl.'s Br. ECF # 14 at 12.

First, ALJ is not required to consider the patient-provider relationship when evaluating medical opinions. Under the new rules, no medical opinion is inherently entitled to any special deference based on the relationship with a claimant, including a treating relationship. Rather, all medical opinions are considered using regulatory factors. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Second, the ALJ evaluated Dr. Wilk's medical opinion properly under the new rules. For claims filed on or after March 27, 2017, as Plaintiff's was (*see* Tr. 223), the medical opinion evidence of record must be evaluated based on five listed factors pursuant to the regulations in 20 C.F.R. § 404.1520c. The two most important considerations an ALJ must examine when evaluating medical opinions are (1) supportability[3] and (2) consistency[4]. 20 C.F.R. §§ 404.1520c(a), 416.920c(a).

Here, the ALJ found Dr. Wilk's opinion regarding Plaintiff's limitations "extreme and inconsistent." Tr. 31. The ALJ stated:

> I find not persuasive the opinions set forth by Leonard Wilk M.D., the claimant's primary care provider. On June 8, 2021, Dr. Wilk opined that the claimant could "rarely" lift and carry less than 10 pounds; sit, stand and walk for less than 2 hours and could never twist and never stoop. The claimant is likely to be off task 25% or more during a typical workday. She is likely to be absent from work more than four (4) days per month . . . I note that this report is a checkbox form with no significant narrative explanation and he offered no citation to supporting findings. These findings are not consistent with Dr. Wilk's own physical examination findings. .

Tr. 30-31 (internal citations omitted).

The ALJ found two main issues in evaluating the supportability factor for Dr. Wilk's medical opinion. First, the ALJ points out that the opinion itself is a checkbox form with no citation to objective medical evidence. The mere fact that a medical opinion is rendered in the form of a checkbox questionnaire is not in itself a valid reason to reject medical opinion evidence. *Popa v. Berryhill*, 872 F.3d 901 (9th Cir. 2017). However, an ALJ may reject a check-box form that does not provide an objective basis for its conclusions. *Garrison v. Colvin*, 759

---

[3] The most persuasive medical opinions are those that are best supported by relevant objective medical evidence and the medical source's explanation for the opinion. 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1).
[4] The most persuasive medical opinions are consistent with other medical opinions (and prior administrative findings) of record. 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

F.3d 995, 1013 (9th Cir. 2014). The situation noted in *Garrison* is similar to the case here. After reviewing Dr. Wilk's Medical Source Statements (MSS), the Court finds that the ALJ properly concluded that the check-box form lacked supportability because Dr. Wilk did not provide an objective basis for his conclusions. Second, The ALJ determined that Dr. Wilk's MSS dated June 8th, 2021, was not supportable considering Dr. Wilk's own treatment notes taken the same day. Tr. 31. Such notes include several instances where Plaintiff was in no acute distress, had no focal neurological deficits, was alert and fully oriented, had normal behavior and thought content, and had normal judgment. Tr. 2523, 2543, 2548, 2561. These treatment notes contrast with the severity of limitations outlined by Dr. Wilk, such as the "inability to focus or concentrate," (Tr. 2518), and with symptoms associated with CFS, such as malaise and impairment in short-term memory or concentration.

Finally, the ALJ determined that Dr. Wilk's opinion was inconsistent with the entirety of the record, including several instances where Plaintiff was noted to have "normal range of motion, normal muscle tone, normal gait, normal coordination, normal sensation, normal reflexes, symmetric grip strength and 5/5 motor strength bilaterally." Tr. 31 (citing Tr. 579, 632, 671, 859, 863, 870, 874, 964, 1018, 1097, 1110, 1115, 1246, 1278, 1434, 1446, 1823, 1835, 1879, 2446, 2561, 2578). Plaintiff fails to address how these objective medical findings point to harmful error by the ALJ. *See* Def.'s Br. ECF # 17 at 17-18. The treatment notes the ALJ cited to are inconsistent with Dr. Wilk's conclusions and opinion regarding Plaintiff's limitations. Moreover, where evidence is susceptible to more than one rational interpretation, the ALJ's decision should be upheld. *Trevizo*, 871 F.3d at 674-75 (citing *Orn v. Astrue*, 495 F.3d at 625, 630 (9th Cir. 2007)). Therefore, the ALJ properly considered Dr. Wilk's opinion, and she did not commit harmful error.

## ORDER

The ALJ properly evaluated Plaintiff's subjective symptom testimony and the medical opinion evidence from Dr. Wilk regarding her CFS. For the reasons set forth above, the decision of the Commissioner is AFFIRMED.

It is so ORDERED and DATED this 21 day of November, 2023.

_____
MARK D. CLARKE
United States Magistrate Judge

13 - Opinion and Order